L.P. VOIGT, Secretary, Department of Natural Resources
You have requested my opinion on several questions regarding the confidentiality of the Department's land acquisition files.
In the last five volumes of the published opinions of the Attorney General, the subject matter of public records has been discussed numerous times.[1]
I call these earlier opinions to your attention, particularly for the benefit of your staff attorneys who may be counseling you on similar questions on future occasions. With the exception of one opinion, the mentioned opinions do not cover the subject matter of land acquisition files.[2] However, the principles of law, as set forth in the opinions, are applicable to your Department's land acquisition records. Accordingly, many, if not all, of your questions can be answered by reference to these opinions. *Page 574 
You first ask:
 "1. Are the Department of Natural Resources' proposed land conveyance files a public record under Section 19.21 of the Wisconsin Statutes? If so, under what conditions may the Department treat a proposed land conveyance file confidential? May the Department treat the proposed land conveyance file confidential until the acquisition is closed and the deed recorded?"
I assume that your pending acquisition files contain numerous documents. Nothing said in this opinion should be construed as implying that the entire contents of any particular file, such as a pending acquisition file, are privileged or closed to public inspection. There is then no such thing as a "closed" file, a file closed to the public. Based on the principles, as hereinafter discussed, the right to public inspection must be evaluated on a document by document basis.
The contents of pending land acquisition files of the Department are public records. 60 OAG 470 (1971), at 472. See also, sec. 16.80 (2) (a), Stats.
Although the Department's pending acquisition files are public records, this is not to say that the entire contents of such files are open to public inspection. 60 OAG 285 at 287. In this opinion, we stated to you, "that sec. 19.21, Stats., will be construed in pari materia with sec. 66.77, Stats., . . . the Wisconsin open meeting law, and that the policy guidelines for holding closed meetings set forth in sec. 66.77 (3), Stats., will be applicable to the question of confidentiality of records under sec. 19.21."
Section 66.77 was repealed and recreated by ch. 297, Laws of 1973. Even though the legislature changed the language of former sec. 66.77 (3), such change does not affect the validity of 60 OAG 285 in respect to the present question. Section 66.77, clearly exempts deliberations or negotiations on the purchase of public property from the requirement of open meetings. By applying the principles that are set forth in 60 OAG at 287, the obvious and general conclusion is that public records regarding pending acquisitions do not have to be made available for public inspection. *Page 575 
Your questions almost assume the answer which is simply that generally speaking, the contents of pending acquisition files are a class of public records of which public inspection may be refused until such time as the transaction is closed and the public interest fully protected by recording of the conveyance.
You further ask:
 "2. Are private or staff appraisals public records under Section 19.21, Wisconsin Statutes? If so, under what conditions may the Department treat an appraisal confidential? At what point, if ever, should an appraisal be available for public inspection?"
The appraisal is part of the Department's pending acquisition file and the principles discussed and the answers given in response to your first series of questions apply in all respects to this series of questions.
Your third question is:
 "3. Does a private appraiser's contractual right to approve or disapprove the release of appraisal information affect the classification of a private appraisal as public record? Specifically, limitations comparable to the following:
 "`Neither all nor any part of the contents of this report shall be conveyed to the public through advertising, public relations, news, sales or other media, without the written consent and approval of the author particularly as to the valuation conclusions and the identity of the appraiser or firm with which he is connected.'"
The sample contract language does not appear to me to cause any problems with the legislative and court doctrine of the public's "right to know." The contract language is not particularly clear, but seems to preclude the Department from disclosing the contents of the report by particular means such as advertising, etc. The contract provision or clause does not relate to or bar public inspection. However, even assuming that the quoted language could be construed as intending to bar public inspection, such contractual provision would be invalid on the grounds of being contrary to public policy. Pedrick v. First Nat. Bank of Ripon
(1954), 267 Wis. 436, 66 N.W.2d 154. *Page 576 
Knowledge of the duties and responsibilities imposed by law on your Department are imputed to persons who enter into contracts with your Department. Herro v. Wis. Fed. Surp. P. Dev. Corp. (1968), 42 Wis.2d 87, 114, 166 N.W.2d 433. It can be stated unequivocally that the court would not uphold action barring public inspection on the basis of the quoted contractual language. What the public does with the information gathered from such public inspection is not the Department's responsibility, nor can any liability attach to the Department from the public's subsequent use.
You also ask:
 "4. If the appraisal or the proposed land conveyance file is available for public inspections, what use, if any, may information contained therein be used for private gain?"
In 58 OAG 67 (1969), the following language appears which was quoted from State ex rel. Youmans v. Owens (1965), 28 Wis.2d 672,137 N.W.2d 470:
 "`That his motivation in seeking inspection is to benefit his newspaper and permit it to publish the material gained therefrom is immaterial. The fact that he as a citizen deems it essential that the material contained in the report be made available to the public is sufficient to qualify him as the real party in interest.'" (P. 70)
Continuing, the opinion concluded:
 "As our discussion in the answer to Question (1) indicates, a custodian of public records in this state cannot be concerned with the purposes behind a person's request to view records and obviously the purposes for which certified copies are requested is also immaterial. . . ."
As stated in answer to your previous question, the public's use of public information is not the Department's responsibility.
Lastly, you advise:
 "Recently, this Department has received numerous requests for proposed land conveyance files containing both staff and private appraisals. The Department is concerned that by *Page 577 
satisfying these requests confidentiality will be breached or future negotiations with prospective sellers will be prejudiced."
I see no issue of confidentiality in the subject matter of pending acquisition files in the sense that information is gained by your Department on the promise of confidentiality. Certainly, the contract provision previously quoted does not involve confidentiality, for appraisals are contracted and paid for by state funds. For a discussion on confidentiality, based on information acquired on a promise of confidentiality, see 59 OAG 226 (1970); 60 OAG 284; and 60 OAG 422.
In summary, it is my opinion that the contents of the Department's land acquisition files are public records; that much of what is contained therein may be privileged and public inspection denied. The grounds for denying public inspection and the procedures to be employed, are fully discussed in the numerous opinions of this office previously referred to. However, in conclusion, I do have some general comments to make in regard to the specific matter of land acquisition files.
As to acquisition files where the property has been acquired, there can be no general dispositive answer. Whether public inspection should be allowed or denied depends entirely on a balancing of the public's "right to know," as against the need to protect the public interest. In way of illustration, I cite the example of where a particular project may involve numerous acquisitions. Public inspection of the records pertaining to closed transactions may seriously hinder future negotiations on parcels yet to be acquired within the particular project. However, I cannot conclude that in all such situations, disclosure or inspection may be denied, for the time involved between the date of the acquisition and the demand for inspection must be considered as to whether public inspection would really be detrimental to the public interest. Other factors that may have to be considered by the custodian of the files within this same context are the location and similarity of the parcels acquired to those to be acquired. If the custodian of the Department's records concludes that on balance the public interest outweighs the public's "right to know," inspection may be denied even on closed acquisition files. The determination not to allow inspection must be made not only on a case by case situation, but on a document by document basis *Page 578 
with careful deliberation. In any situation, including pending acquisition files where public inspection is refused, the specific reason or reasons must be given to the person seeking inspection. It is not sufficient to merely say that such inspection would be contrary to the public interest.
For a further discussion on what factors may be properly considered in denying public inspection and the procedures to use when denying public inspection, I specifically refer you to 61 OAG 361 (1972). Enclosed for your convenience is a copy of an opinion dated September 19, 1974, addressed to the Honorable Patrick J. Lucey, Governor, which discusses many of these same issues.
VAM:CAB
[1] 57 OAG 138; 58 OAG 67; 59 OAG 226; 60 OAG 43; 60 OAG 284; 60 OAG 422; 60 OAG 470; 61 OAG 12; 61 OAG 297; 61 OAG 361.
[2] 61 OAG 361.